UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**B.Y.O.B. INC.**,

Debtor.

Case No. **11-62347-11**

# MEMORANDUM OF DECISION

At Butte in said District this 17th day of February, 2012.

Pending in this Chapter 11 case is the Montana Department of Revenue's ("DOR") Motion for Declaration of Inapplicability of Automatic Stay (hereinafter "Motion") filed on January 3, 2012 (Docket No. 7), which seeks a determination that pending state court actions involving the DOR and the Debtor, and DOR's administrative enforcement actions against Debtor based on the DOR's regulation of alcoholic beverages in Montana, are exempt from the automatic stay under 11 U.S.C. § 362(b)(4) under the DOR's "police and regulatory power." A hearing on the DOR's Motion was held on expedited notice at Missoula on January 12, 2012. The Debtor and DOR both were represented by counsel. Testimony and exhibits were admitted. At the conclusion of the parties' cases-in-chief the Court granted the parties time to file briefs and for the Debtor to submit its offer of proof. The briefs and offer of proof (Dkt. 28) have been filed and reviewed by the Court, together with the record and applicable law. This matter is ready for decision. For the reasons set forth below, the DOR's Motion will be granted and the stay is not applicable to the DOR's state enforcement actions.

This Court has exclusive jurisdiction of this Chapter 11 case under 28 U.S.C. § 1334(a).

1

The DOR's Motion to determine applicability of the automatic stay under § 362(b)(4) is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (G), and (O). This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

The DOR was represented at the hearing by special assistant attorneys general Teresa G. Whitney ("Whitney") and Joel E. Silverman ("Silverman"). The DOR called no witnesses. Debtor was represented by attorney Harold V. Dye ("Dye") of Dye & Moe, P.L.L.P., Missoula. Debtor's president Jim Glantz ("Glantz") testified, as did attorney David Stufft ("Stufft") who represented the B.Y.O.B., Inc. ("BYOB") in administrative and state court proceedings since 2009[1]. Exhibits ("Ex.") 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and Debtor's Ex. A were admitted into evidence without objection. Debtor's Ex. E and D were admitted over the DOR's objections. Debtor's Ex. B and C were refused.[2]

## FACTS & PROCEDURAL HISTORY

In 1996, BYOB acquired an "Agency Franchise Agreement" for agency liquor store number 12 by assignment from Charles Elmer Sprague. Ex. 1 is the assignment of the Agency Franchise Agreement, and is signed on page 2 by Donna Glantz as president and 100% shareholder of BYOB. Ex. 1 includes a long list of "rights, privileges and responsibilities" detailing how the assignee must purchase liquor inventory from the state liquor warehouse, ownership and control, insurance requirements, compliance with state and local codes, store

---

[1] Barb Riley, Debtor's store manager, was permitted to testify in relation to the Debtor's offer of proof.

[2] The Debtor submitted its offer of proof at Dkt. 28 which states that Debtor has a ready, willing and able purchaser, identified as Gildo, LLC, to purchase Debtor's Agency #12 Franchise store contract rights, furniture, fixtures, equipment and inventory, for the sum of $2,300,000 cash. The offer of proof is refused.

signs, parking, sales, reports, hours and days of operation, payment for liquor purchases, advertising, and other restrictions.

On August 24, 2009, the DOR sent BYOB Ex. 2, a "Second Amended Notice of Revocation" of BYOB's Agency Franchise Agreement and opportunity for a hearing in DOR administrative proceedings.  Ex. 2 alleges several violations of the obligations and requirements detailed in Ex. 1.  Stufft testified that all the alleged violations in Ex. 2 are breaches of contract embodied in the Agency Franchise Agreement.  He testified that BYOB disputes the breaches occurred, or that any breaches were not material if they occurred.

Ex. 3 is the DOR's motion for partial summary judgment based upon some of the violations filed in DOR Cause No. 09-094-LQ.  Ex. D is BYOB's reply filed in opposition to the DOR's motion, dated December 22, 2009.  Ex. 3 includes the hearing examiner's Order dated February 4, 2010, granting summary judgment for Counts 3, 6 and 7 stated in Ex. 2 and deeming those facts established, with a hearing on contested facts on remaining counts to be heard in Cause No. 09-094-LQ.  Ex. 5 is an Order granting summary judgment in favor of the DOR on all counts in the first administrative revocation action, Cause No. 09-094-LQ, signed by the hearing examiner on September 10, 2010, and authorizing the DOR to proceed in its revocation action against BYOB.

On February 16, 2010, the DOR sent BYOB and Donna Glantz Ex. 4, a "Notice of Termination of Agency Franchise Agreement" advising BYOB of additional violations, and including another notice of revocation and opportunity for hearing.  DOR moved for summary judgment in the second administrative action, Cause No. 10-055-LQ.  BYOB filed a reply in opposition signed by Stufft on January 18, 2011.  Ex. 6 is an Order granting summary judgment

3

in favor of the DOR in Cause No. 10-055-LQ, signed by the hearing examiner on June 8, 2011. Ex. 6 concludes: "The Department should proceed in its action to terminate the Agency Franchise Agreement of State Agency Liquor Store #12, d/b/a B.Y.O.B., Inc., Kalispell, Flathead County, Montana."

BYOB appealed the administrative decisions, but they were affirmed by the DOR. BYOB initiating an action to review the administrative decisions in the Montana Eleventh Judicial District Court, Flathead County, Cause No. DV-11-49. Ex. 7 lists BYOB Agency Liquor Store #12 as Petitioner, and the DOR as Respondent.

Ex. 7 is a conditional order entered by the state court in Cause No. DV-11-49 on March 18, 2011, granting a stay of execution of the DOR's final order. Ex. 7 imposes additional requirements on BYOB to comply with the Agency Franchise Agreement and the Montana Alcoholic Beverage Code pending a final hearing, including that BYOB remain current with its payment for all liquor purchases from the State of Montana. Ex. 7 further provides that if there are violations by BYOB the Court will terminate the stay, BYOB "agrees to immediately cease operating as a state agency liquor store", and the DOR would be permitted to seize all liquor inventory.

Donna Glantz died in May of 2011, and Jim Glantz was appointed her personal representative on June 7, 2011, by letters issued in the Montana Twentieth Judicial District Court, Lake County. Ex. A.

On November 14, 2011, the DOR filed a motion to lift the stay in DV-11-49, Ex. 8, alleging that BYOB was in violation of Ex. 7 by failing to remain current on its payment for liquor purchases. Ex. 9 is an affidavit of a agency liquor store specialist for the DOR's Liquor

Control Division in support of the allegation of late payment in Ex. 8.

On December 21, 2011, the DOR filed a second motion to lift the stay in DV-11-49, Ex. 10, alleging additional violations of the Agency Franchise Agreement and violations of the state court's stay order, Ex. 7.  The violations alleged in Ex. 10 include failure to collect rent, failure to provide various documentation, and charging less than the posted price for liquor to a renter, ABC, Inc.  In Ex. 10 the DOR repeated its request that the court's stay be terminated and allow the DOR to terminate BYOB's Agency Franchise Agreement.

Debtor filed its voluntary Chapter 11 petition on December 23, 2011, signed by Jim Glantz as its president.  On the same date Stufft filed in Cause No. DV-11-49(A) a notice of bankruptcy filing, Ex. 11, advising of the automatic stay of any further action against BYOB under 11 U.S.C. § 362(a).

Debtor filed its Schedules and Statement of Financial Affairs ("SOFA") on January 3, 2012, signed by Glantz under penalty of perjury.  Debtor's Schedules list total assets valued at $304,640.34 and liabilities in the total amount of $690,962.05.  The DOR is the largest creditor listed on Schedule D with a claim in an amount stated of $275,000 secured by a statutory lien and inventory with a value stated in the amount of $172,642.78.  The SOFA lists the two state court actions of the Debtor against the DOR in the Montana Eleventh Judicial District Court, Nos. DV-11-49 and DV-11-1249(A).

The DOR filed its Motion on January 3, 2012, requesting an Order declaring that the DOR's regulation of alcoholic beverages and future enforcement actions are exempt from the automatic stay under § 362(b)(4) as exercises of Montana's police or regulatory power.  DOR's counsel at the hearing specified that it is seeking to terminate the Agency Franchise Agreement

because of the Debtor's failure to follow the conditions, but admitted that there are some pecuniary interests.  To date, the DOR has not filed a proof of claim.

The Debtor's counsel argued at the hearing that it has a buyer of its interest in the Agency Franchise Agreement which is willing to pay $2.3 million, which is enough to pay the creditors in full, but that the DOR will not accept its buyer.  The buy/sell agreement was presented to the DOR, but the DOR apparently rejected the offer after determining that the requirements for the sale of the Agency Franchise Agreement rights were not satisfied.

Subsequent to the hearing, the Debtor and United States Trustee filed a stipulation for the approval of a trustee, which this Court approved by Order entered on February 15, 2012.  Christy L. Brandon was appointed as Trustee in this case.

## DISCUSSION

The Debtor's filing of his Chapter 7 bankruptcy petition on January 9, 2007, gave rise to an "automatic stay."  11 U.S.C. § 362(a).  The Ninth Circuit has repeatedly reiterated the broad scope of the automatic stay as "one of the most important protections in bankruptcy law."  *See In re Risner*, 317 B.R. 830, 835 (Bankr. D. Idaho 2004), quoting *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214-15 (9th Cir. 2002); *Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d 581, 585 (9th Cir. 1993).  The Ninth Circuit construed the automatic stay *In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir. 2000):

> The automatic stay is self-executing, effective upon the filing of the bankruptcy petition.  *See* 11 U.S.C. § 362(a); *The Minoco Group of Companies v. First State Underwriters Agency of New England Reinsurance Corp.* (*In re The Minoco Group of Companies*), 799 F.2d 517, 520 (9th Cir.1986).  The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. §

6

362(a)(6).

In this district, as well as the Ninth Circuit, § 362(a) usually should be read to apply only to actions against the debtor, not to actions initiated by the debtor. *In re Palmdale Hills Property, LLC*, 423 B.R. 655, 663-64 (9th Cir. BAP 2009); *Behling, et al. v. Russell, et al.,* 20 Mont. B.R. 221, 229 (D. Mont. 2003); *In re Merrick*, 175 B.R. 333, 336-37 (9th Cir. BAP 1994). Ex. 11, the "Notice of Bankruptcy Filing" filed by Stufft in DV-11-49(A), identifies BYOB as the Petitioner and Appellant. As such BYOB was the initiator of DV-11-49, and under *Behling* and *Merrick* § 362(a) would not apply to stay Debtor's action in DV-11-49 or the DOR's defense thereto.[3] *Palmdale Hills*, 423 B.R. at 663-64; *Behling,* 20 Mont. B.R. at 229.

Exceptions to the stay are listed at § 362(b), including the "police power" exception of § 362(b)(4): "Section 362(b)(4) provides that the filing of a bankruptcy petition does not operate as an automatic stay 'of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police or regulatory power.'" *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1107 (9th Cir.2005) (quoting 11 U.S.C. § 362(b)(4)).

In the Ninth Circuit the phrase "police or regulatory power" is generally construed to "refer to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court." *City & County of San Francisco v. PG & E. Corp.*, 433 F.3d 1115, 1123 (9th Cir. 2006), quoting *Hillis Motors,* 997 F.2d at 591.

The stated policy of the Montana Alcoholic Beverage Code ("MABC"), MONT. CODE

---

[3]That is not to say that § 362(a) would not stay actions against property of the estate or the Debtor after a final decision was entered in DV-11-49(A), but since the Debtor initiated DV-11-49(A) the stay does not apply to that proceeding.

ANN. § 16-1-101, *et seq.*, is:

> (2) It is the policy of the state of Montana to effectuate and ensure the entire control of the manufacture, sale, importation, and distribution of alcoholic beverages within the state subject to the authority of the state acting through the department.
>
> (3) *This code is an exercise of the police power of the state* for the protection of the welfare, health, peace, morals, and safety of the people of the state and of the state's power under the 21st amendment to the United States constitution to control the transportation and importation of alcoholic beverages into the state. The overall purposes of this code under the 21st amendment to the United States constitution are to promote temperance, create orderly markets, and aid in the collection of taxes. The provisions of this code must be broadly construed to accomplish these purposes.

(Emphasis added).

It has long been held in Montana that the sale of alcoholic beverages is subject to the regulation and control of the police power of the state. *State v. Barnes* (1988), 232 Mont. 405, 408-09, 758 P.2d 264, 266, citing *State v. Andre* (1936), 101 Mont. 366, 371, 54 P.2d 566, 568 (other citations omitted). The specific policy as to the retail sale of liquor is stated at § 16-1-103:

> It is the policy of the state that it is necessary to further regulate and control the sale and distribution of alcoholic beverages within the state and to ensure that the department has complete regulatory control of the sale of liquor in this state. It is advisable and necessary, in addition to the operation of the agency liquor stores now provided by law, that the department be empowered and authorized to grant licenses to persons qualified under this code to sell liquor purchased by them at agency liquor stores at retain posted price in accordance with this code and under rules promulgated by the department and under its strict supervision and control and to provide severe penalty for the sale of liquor except by and in agency liquor stores and by persons licensed under this code. The restrictions, regulations, and provisions contained in this code are enacted for the protection, health, welfare and safety of the people of the state.

Section 16-1-103 likewise long has been held to be a police regulation enacted pursuant to the police powers of the state. *State v. Paskvan* (1957), 131 Mont. 316, 321, 309 P.2d 1019,

1021; *St. v. Erlandson* (1952), 126 Mont. 316, 322, 249 P.2d 794, 797.

Given the clear statement of policy of § 16-1-101(3) and § 16-1-103, and the longstanding case law in this state construing that policy as an exercise of the police power of the state, arising from the 21st amendment to the United States Constitution, and that the MABC is an exercise of the police power of the state "for the protection, health, welfare, and safety of the people" of Montana, the Court does not find merit in Debtor's argument that the DOR's enforcement actions were transformed into mere breach of contract claims, for which damages may be determined and paid, instead of an exercise of the State's police power, by the mere existence of a written Agency Franchise Agreement, Ex. 1. Section 16-1-103 provides that the DOR "has complete regulatory control of the sale of liquor," and that the DOR is authorized to grant licenses to persons qualified to sell liquor at agency liquor stores.

Debtor argues that "every governmental contract is based on statutes and administrative regulations," and that to adopt the DOR's position would result in too broad a reading of the police power exception. However, the Court doubts that "every governmental contract" is based on statutes and regulations which invoke the state's police power as specifically as does § 16-1-101(3): "This code is an exercise of the police power of the state ...." The Court finds no evidence in the record that the DOR was acting in any way not consistent with its police power, including in attempting to terminate the Agency Franchise Agreement and recover the inventory being sold in violation of that agreement.

Debtor argues that Ex. 1 is an executory contract which is property of the estate, and that the DOR's enforcement action is akin to an ordinary breach of contract action for which the damages should be established and paid along with other creditors from the sale of the Agency

9

Franchise Agreement. However, the operation of liquor stores is governed not by ordinary contract law, but by MONT. CODE ANN. § 16-2-101. Section 16-2-101(5) sets forth requirements for an agency franchise agreement, including term, insurance and indemnification requirements. Section 16-2-101(8) provides for the termination of an agency franchise agreement as follows:

> (a) The department may terminate an agency franchise agreement if the agent has not satisfactorily performed the requirements of the franchise agreement because the agent:
> (i) charges retail prices that are less than the department's posted price for liquor, sells liquor to persons who hold liquor licenses at less than the posted price, or sells liquor at case discounts greater than the discount provided for in 16-2-201 to persons who hold liquor licenses;
> (ii) fails to maintain sufficient liability insurance;
> (iii) has not maintained a quantity and variety of product available for sale commensurate with demand, delivery cycle, repayment schedule, mixed case shipments from the department, and the ability to purchase special orders;
> (iv) at an agency liquor store located 35 miles or more from the nearest agency liquor store, has operated the agency liquor store in a manner that makes the premises unsanitary or inaccessible for the purpose of making the purchases of liquor; or
> (v) fails to comply with the express terms of the agency franchise agreement.

Given this specific statutory enforcement found in the MABC, the Court sees no reason to look to ordinary contract law instead of the specific statute. Statutory construction canons require that "[w]here both a specific and a general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first." *In re Padilla*, 222 F.3d 1184, 1192 (9th Cir. 2000).

The Ninth Circuit applies two alternative tests to determine whether the actions of a governmental unit are in exercise of its police and regulatory power as defined in 11 U.S.C. section 362(b)(4): the "pecuniary purpose" and the "public policy" test. *City & County of San*

*Francisco v. PG & E. Corp.*, 433 F.3d at 1123-24; *Universal Life Church v. United States (In re Universal Life Church, Inc.)*, 128 F.3d 1294, 1297 (9th Cir.1997). Satisfaction of either test will suffice to apply the police power exception from the reach of the automatic stay. *Id.*; *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1108 (9th Cir.2005).

> The Ninth Circuit explained:
>
> If the action primarily seeks to protect the government's pecuniary interest, the automatic stay applies. If the suit primarily seeks to protect the public safety and welfare, the automatic stay does not apply. Universal Life, 128 F.3d at 1297; see also Mirant, 398 F.3d at 1109 ("If the suit seeks to protect the government's pecuniary interest, the § 362(b)(4) exception does not apply. On the other hand, if the suit seeks to protect public safety and welfare, the exception does apply.").

*City & County of San Francisco v. PG & E. Corp.*, 433 F.3d at 1124.

In *City & County of San Francisco v. PG & E. Corp.*, the Ninth Circuit affirmed actions by the California Attorney General and the City of San Francisco for restitution because the claims did not relate primarily to the protection of the government's pecuniary interest, so the restitution claim "fits comfortably within section 362(b)(4)'s 'police or regulatory power' exception." 433 F.3d at 1125. The Debtor argues that the DOR's attempt to terminate the Agency Franchise Agreement is intended to advance its own pecuniary interest, and directly interferes with critical property of the estate. However, the DOR has not filed a proof of claim in this case, and the Court finds no evidence in the record how the DOR's stated intention to terminate the Agency Franchise Agreement is intended primarily to advance its own pecuniary interest. On the contrary, termination of Ex. 1 would, according to Debtor's Schedules and offer of proof, eliminate the most valuable asset of the estate which Debtor claims is worth $2.3 million and could pay creditors, including the DOR, in full. The evidence shows that the DOR's

actions tend primarily against its pecuniary interest, except for recovery of the inventory, and are intended more to enforce its regulations and policy as to the sale of liquor by terminating Ex. 1 because of Debtor's violations than primarily to protect the DOR's own pecuniary interest.  The pecuniary interest test favors the DOR.

Debtor's brief does not discuss the public policy test, except in arguing that the DOR's actions are opposed to public policy of paying all creditors in full from the sale of critical property of the bankruptcy estate.  The DOR's reply brief argues that the impact on the bankruptcy estate is irrelevant.

> "Under the 'public purpose' test, the court determines whether the government seeks to 'effectuate public policy' or to adjudicate 'private rights.' " *Mirant*, 398 F.3d at 1109 (quoting *Continental Hagen Corp.*, 932 F.2d at 833). If the primary purpose of the suit is to effectuate public policy, then the exception to the automatic stay applies. However, "[a] suit does not satisfy the 'public purpose' test if it is brought primarily to advantage discrete and identifiable individuals or entities rather than some broader segment of the public." *Id.*

*City & County of San Francisco v. PG & E. Corp.*, 433 F.3d at 1125.

From examination of the notices of revocation, Ex. 2 and 4, and DOR's motions to lift stay in Ex. 8, and 10, which were admitted without objection by Debtor, the Court finds and concludes that the DOR's primary purpose of its enforcement actions is to effectuate public policy and terminate Ex. 1 because of the Debtor's numerous violations of its obligations under Ex. 1.  The Court sees no evidence that the DOR's actions were brought primarily to advantage discrete and identifiable entities, but rather the DOR's actions were to enforce the obligations required from BYOB as agent under Ex. 1 and the provisions of the MABC.  The public policy test favors the DOR

Debtor argues that the DOR is attempting, by terminating Ex. 1, to assert control over

property of the estate which is critical to Debtor's reorganization. The DOR argues that its approval of any assignment independent of this Court's jurisdiction.

Section 16-2-101(10) provides that an agent may assign an agency franchise agreement, "upon approval of the department, .... The department may not unreasonably withhold approval of an assignment request." The DOR argues that its approval is independent of this Court's jurisdiction, and that it wishes to take action on additional violations of the MABC by the Debtor.

The Debtor argues that the Agency Franchise Agreement is an executory contract that it wishes to sell to pay off all creditors. There is no motion to assume executory contract pending before this Court, nor is there a motion to sell property free and clear of the DOR's interest. Since the DOR is on record as not consenting to any sale, the requirements of 11 U.S.C. § 363(f) would have to be satisfied for this Court to approve any sale. Those requirements include "(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;" and "(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." § 363(f).

Both of those subsections invoke provisions of Montana law, not federal or bankruptcy law. Therefore, this Court's decision that the DOR's enforcement actions are excepted from the stay under § 362(b)(4) does not deprive the Debtor of the opportunity to convince the state court that it should compel the DOR to accept a money satisfaction from the Debtor for its alleged violations instead of terminating the Agency Franchise Agreement.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this Chapter 11 case under 28 U.S.C. § 1334(a).

2. The DOR's Motion to determine applicability of the automatic stay under § 362(b)(4) is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (G), and (O).

3. The actions initiated in state court by the Debtor appealing the DOR's administrative determinations are not stayed by 11 U.S.C. § 362(a), nor are the DOR's defenses.

4. The DOR's enforcement actions pursuant to the Montana Alcohol Beverage Code are exercises of the police and regulatory power of the State of Montana under § 16-1-102(3) and § 16-1-103. As such the DOR's enforcement actions are excepted from the automatic stay under 11 U.S.C. § 362(b)(4) as continuation of actions or proceedings by a governmental unit to enforce such unit's police or regulatory power.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above overruling Debtor's objection and granting the DOR's Motion for Declaration of Inapplicability of Automatic Stay (Dkt. 7).

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana