UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**B.Y.O.B. INC.**,<br><br>Debtor. | Case No. **11-62347-7** |

**MEMORANDUM OF DECISION**

At Butte in said District this 15th day of January, 2013.

Pending in this Chapter 7 case are the Trustee's Objections (Docket Nos. 136 and 139), filed September 26, 2012, to Proof of Claim No. 9 filed by the Estate of Donna Glantz (hereinafter "Donna's Estate") and Proof of Claim 10 filed by Glantz Family N/P ("Glantz Family"). A hearing on the Trustee's Objections was held after due notice at Missoula on November 8, 2012. The Trustee Christy L. Brandon ("Brandon") of Brandon Law Firm, PLLC, Bigfork, Montana, appeared. Barbara Riley ("Riley") and Jim Glantz testified. Exhibits ("Ex.") 1, 2, 3, and 4 were admitted into evidence without objection. At the conclusion of the parties' cases-in-chief the Court heard argument of the parties, then took both Objections under advisement. After review of the Objections, record and applicable law, these matters are ready for decision. For the reasons set forth below the Trustee's Objections both are sustained, Claim 9 will be allowed in the amount of $17,150.00, and Claim 10 will be disallowed based upon the statute of frauds, MONT. CODE ANN. ("MCA") § 28-2-903(1)(a).

This Court has jurisdiction of this Chapter 7 case under 28 U.S.C. § 1334(a). Allowance of claims against the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This

1

Memorandum includes the Court's findings of fact and conclusions of law.

## FACTS & PROCEDURAL HISTORY

The Debtor B.Y.O.B. Inc. ("BYOB"), is a corporation located in Kalispell, Montana. Its owner was Donna Glantz ("Donna") who is deceased. Jim Glantz testified that he is the personal representative of Donna's Estate, with power of attorney. He also is a member of the Glantz Family which has 22 members.

Barbara Riley ("Riley") testified that she was employed by BYOB as an independent contractor providing bookkeeping from 1999 or 2000 until approximately 2005 or 2006. She then worked for BYOB again as bookkeeper until terminated by Brandon after she was appointed Trustee. Riley testified that she was employed according to a written management agreement and was responsible for day-to-day management and operations of BYOB. Jim Glantz testified that BYOB was in disarray after Donna's death, that he did not want anything to do with BYOB's business so he hired Riley on behalf of Donna's Estate, and she asked him for a loan for the business.

Riley testified that she asked Donna about the history of her company and was told that Donna's family loaned her money to open an agency liquor store and purchase inventory. Jim Glantz testified that several members of the Glantz Family sold silver to raise funds to loan to BYOB for liquor purchases.

Ex. 3 is an "Account QuickReport" generated by BYOB's Quickbooks program. The first column on the left of Ex. 3 under "Type" is bold print stating "Long Term Liabilities" under which is printed "N/P - Glantz Family." The first entry dated 1/10/2000 reflects a payment to the State for "Liquor" in the amount of $29,900.21. Riley testified that the $29,900.21 was a cash

infusion which corresponds with the Glantz Family loan to BYOB. She testified that she asked for clarification and was told that the transactions with Glantz Family were notes payable, but she never saw any written notes.

Ex. 3 has additional cash infusions which brought the balance to $97,841.49, followed by a series of repayments. Ex. 3 shows another loan advance in the amount of $13,000 dated 10/8/2003, and a $60,000 deposit dated 2/18/2010 described as "temporary loa. . ." which brought the balance to $105,012.26. Riley repeated that she did not see a written note for the $60,000 loan which was from John Glantz, but testified that interest was paid on that $60,000 for tax purposes. Ex. 3 concludes with a balance due to Glantz Family for the note payable in the amount of $45,012.26, which Riley testified corresponds with the amount shown due the Glantz Family on Ex. 4.

Riley testified that, from July 5, 2011, through November 8, 2011, on behalf of BYOB she signed four (4) loan agreements evidencing loans from Donna's Estate to BYOB, which she testified were used for cash flow. Ex. 1 includes copies of the 4 loan agreements, each signed by Riley as BYOB's store agent, and signed by Jim Glantz on behalf of Donna's Estate.

The first loan agreement on Ex. 1 is dated July 5, 2011, in the amount of $13,200 loaned by Donna's Estate to BYOB "for operations." It is signed by Riley for BYOB and by Jim Glantz as personal rep of Donna's Estate. Collateral in the form of current inventory and FF&E on BYOB's books is provided, and it provides "Repayment of this loan shall come from operations as cash flow shall provide, with payoff required by December 31, 2011." No express provision exists for payment of interest on the first loan. Ex. 2 reflects an increase in BYOB's long term liabilities in the amount of $13,200, corresponding to the first loan agreement, dated 07/05/2011

with the payee identified as "Donna Glantz" and under the column headed "Memo" the words "loan from estat . . ."

Riley described Ex. 2 as copies of the Quickbooks ledger for BYOB's long-term liabilities. Beneath the first loan entry on Ex. 2 are a series of decreases to loan term liabilities, with the word "Jim" under the "Memo" column. Those decreases reduced long term liabilities on Ex. 2 to a negative $1,100.00 by 9/27/2011. That negative balance was wiped out by a second loan from "Donna Glantz Estate" in the amount of $18,000, which was dated 9/28/2011.

The second loan agreement between BYOB and Donna's Estate shown on Ex. 1 is dated August 31, 2011[1], in the amount of $18,000.00 "for operations." The collateral and payoff date are the same as the first loan agreement. The $18,000 loan increased the balance on Ex. 2 to a positive $16,900. Ex. 2 shows several payments described as "Jim – loan repmt" following the second loan which reduced the balance of long-term liabilities to $11,400.00 as of 10/18/2011 when the third loan from Donna's Estate took place.

The third loan agreement on Ex. 1 is dated October 19, 2011, in the amount of $30,000, under the same terms as the prior 2 loans. The third loan increased the balance on Ex. 2 to $41,400.00. That was followed by several loan repayments to "Jim" which reduced the balance on Ex. 2 to $36,900 until the fourth loan from Donna's Estate took place on 11/08/2011, which raised the long-term liabilities balance to $56,900.

The fourth loan agreement between BYOB and Donna's Estate on Ex. 1 is dated November 8, 2011, in the amount of $20,000, with the same terms and the other 3 loans. That

---

[1] The record provides no explanation for the discrepancy between dates for the second loan in Ex. 1 and 2.

loan was followed by another series of loan repayments to Jim through and including 12/31/2011[2], which reduced the long-term liabilities balance on Ex. 2 to $17,500.

No provision is made on Ex. 1 for payment of interest on any of the 4 loans from Donna's Estate. Riley was asked on direct examination by the Trustee about any provision on Ex. 1 for payment of interest and she answered that she did not see any. Riley verified the balance due shown on Ex. 2 to Donna's Estate of $17,150.00.

The Debtor commenced this case by filing a Chapter 11 petition on December 23, 2011, which is signed by Jim Glantz for the Debtor. On February 14, 2012, the Debtor filed its monthly operating report ("MOR") for the month of January 2012. Ex. 4. Riley testified that she signed Ex. 4 as responsible party in assisting Debtor's attorney at his request. Jim Glantz testified that he understood that Riley was acting within the scope of her employment in signing the MOR, Ex. 4. Ex. 4 includes a balance sheet of the Debtor as of January 1, 2012[3]. Under "Long Term Liabilities" Ex. 4 lists a $17,150 liability described as "Loan – DG Estate" and another $45,012.26 liability described as "N/P – Glantz Family."

Brandon was added to the case as trustee in the Chapter 11 case on February 16, 2012, by stipulation with the Debtor. A claims bar date was fixed at May 18, 2012. Brandon administered the case while in chapter 11 as a liquidating case, not a reorganization. The case was converted to Chapter 7 on November 6, 2012.

On May 18, 2012, Donna's Estate and the Glantz Family filed Proofs of Claim Nos. 9 and

---

[2]The last 3 loan repayments to Jim shown on Ex. 2 occurred on or after the date the Debtor filed the Chapter 11 petition.

[3]The Liabilities & Equity are on pages 10 of 14, and 13 of 14, of Ex. 4.

10, respectively, both of which are signed by Jim Glantz. Claim 9 asserts a claim in the amount of $68,204.00 for Donna's Estate "subject to audit." Claim 9 states the basis for the claim as "Amount of loan balance" at item no. 2, and appears to have cancelled checking the box indicating if the claim includes interest or other charges at item 1[4]. No statement is attached as called for by the claim form which itemizes interest or charges.

Proof of Claim No. 10 asserts a claim in the amount of $177,434.00 described as "Amount of loan balance." The box stating that the claim includes interest is checked. Item 7 on page 2 of Claim 10 states: "Documents in custody of Trustee." A handwritten "Statement Regarding Interest" is attached to Claim 10 signed by Jim Glantz and dated 5/17/2012 which states:

> The Glantz Family extended a loan in the amount of $78,000 on October 17, 1995. Interest was variable and was to be added to the principle owing on an annual basis at a rate of bank prime lending rate plus 2%. Interest accruing from October 17, 1995, to December 17, 2011 is figured at $212,650.00. Payments made on the balance owing are estimated to be $133,214.00. Those amounts have not been audited.

The Trustee asked Jim Glantz on direct examination why the amounts he entered on Claims 9 and 10 are higher than the amounts shown on BYOB's books and records admitted into evidence as Ex. 2 and 3, and the MOR admitted as Ex. 4. He testified that the books and records do not include accrued interest on the loans, and that Donna's Estate and Glantz Family request reasonable interest on their claims at the rate of ten percent (10%) to represent their lost opportunity cost.

On September 26, 2012, the Trustee filed her Objections to Claims 9 and 10 filed by the

---

[4]The box for interest in part 1 is scratched out and "N/A" is handwritten above and to the right of the box. No statement itemizing interest or charges is attached as required.

Estate of Donna and the Glantz Family, respectively. The Trustee objects to Claim 9 because the Debtor's books and records show payments to Donna's estate which leave a balance due to the creditor of only $17,150. The Trustee objects that the $68,204 amount stated in Claim 9 is overstated and false, and is unsupported by any attached documentation, so should be disallowed entirely or allowed only in the amount of $17,150.

The Trustee objects to Claim 10 also because no documentation is attached, and that there is no showing that the $98,000 was paid by the Glantz family to Debtor or is anything other than a capital contribution. The Trustee objects that the claim is barred by applicable statutes of limitations, the statute of fraud and usury. The Trustee requests that Claim 10 be disallowed entirely, or in the alternative allowed only in the amount of $45,012.26 to reflect the balance shown by the Debtor's books and records.

Brandon advised the Court that she reviewed the Debtor's corporate books and general ledger. She stated that the ledger shows long term liabilities owed to Donna's Estate, but that she cannot tell whether the liabilities to Donna's Estate is a contribution or a loan. Brandon argued that it could be a contribution, but that the records did not include any corporate resolution authorizing the obligations owed to Donna's estate, and she found no basis for the creditors to claim accruing interest.

## DISCUSSION

The Trustee objected to Jim Glantz representing Donna's Estate because it has an attorney of record David Stufft[5]. She contends that Donna's Estate is an equity interest holder in this case, and that neither Donna's Estate nor the Glantz Family have produced documents or

---

[5]Notwithstanding, the Court allowed Jim Glantz to argue in order to reach the merits.

7

corporate books and records showing authority for payment of any interest on the loans.

Jim Glantz requested allowance of interest, and argued that he had to cover a debt owed by the estate.

This Court discussed its longstanding rule governing the burden of proof for allowance of claims in *In re Eiesland*, 19 Mont. B.R. 194, 208-09 (Bankr. D. Mont. 2001):

> A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. F.R.B.P. 3001(f). The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000):
>
>> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr.P. 9014.
>>
>> Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm )*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.
>
> \* \* \* \*
>
> "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954

> F.2d 167, 173-74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.

*See also Knize*, 210 B.R. at 778; *Matter of Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).

Thus, the Bank's Proof of Claim No. 2 is *prima facie* evidence of the validity and amount of its claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (quoting *Holm*). This Court finds that Eric, as the objecting party, has not produced sufficient evidence to cause the burden to revert to the Bank to prove the validity and amount of its claim. *Lundell*, 223 F.3d at 1039 (quoting *In re Consol. Pioneer*, 178 B.R. at 226).

The analysis under *Lundell v. Anchor Const. Specialists* was reiterated by the Ninth Circuit in *In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002). Then in 2006 the BAP, in *Litton Loan Servicing, LP v. Garvida (In re Garvida)*, 347 B.R. 697, 706-07 (9th Cir. BAP 2006), discussed clarification provided by the United States Supreme Court decision *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000), regarding the "prima facie evidence" language in Rule 3001(f):

> The Supreme Court has clarified that the Rule 3001(f) "prima facie evidence" language does not address the burden of proof in an objection to claim proceeding. *Raleigh*, 530 U.S. at 22 n. 2, 120 S.Ct. 1951.

> It follows that, after *Raleigh*, Rule 3001(f) cannot be construed as allocating the burden of proof and, instead, operates merely as an evidentiary presumption that is rebuttable.

> The evidentiary presumption of a prima facie case operates to shift the burden of going forward but not the burden of proof. [*Garner v. Shier (In re Garner),* 246 B.R. 617, 622 (9th Cir. BAP 2000)]; *Diamant v. Kasparian (In re So. Cal. Plastics, Inc.)*, 165 F.3d 1243, 1248 (9th Cir. 1999) (although the creditor bears the ultimate burden of persuasion, the debtor must come forward with evidence to rebut the presumption of validity); 9 [COLLIER ON BANKRUPTCY

9

¶ 3007.01[1] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2006)] ("once this burden of going forward to overcome the presumption is met, the ultimate burden is on the claimant"). Hence, at best, Litton's $33,435.46 proof of claim was entitled to the Rule 3001(f) evidentiary presumption, which is capable of being rebutted.

Assuming, without deciding, that the evidentiary presumption did apply, the mechanics of what it takes to rebut the Rule 3001(f) presumption are driven by the nature of the presumption as "prima facie" evidence of the claims validity and amount. *Garner*, 245 B.R. at 621-22. The proof of claim is more than "some" evidence; it is, unless rebutted, "prima facie" evidence. *Id.* One rebuts evidence with counter-evidence. *Id.*

347 B.R. at 706-07.

In *Garvida* the objecting debtors satisfied their burden of going forward by proferring evidence at a hearing proving they made payments, and as a result the burden shifted to the creditor to prove the validity and amount of its claim, which it failed when it failed to provide an accounting. 347 B.R. at 702, 707.

In this instant case no documentation or spreadsheets are attached to Claims 9 and 10 evidencing the loans, itemizing the claims of Donna's Estate and Glantz Family, or providing a basis for the charging or allowance of interest, which is signed by or on behalf of the Debtor. Only Jim Glantz's handwritten statement attached to Claim 10 discusses interest, and it is dated 5/17/2012, long after the cash advances by the Glantz Family shown by Ex. 3 and the 1995 loan to which he refers. Based on the lack of documentation, the Court finds that Claims 9 and 10 are not entitled to the evidentiary presumption or prima facie treatment of the validity and amount of such claims under Rule 3001(f). The claimants have the ultimate burden. *Garvida*, 347 B.R. at 706-07.

Claim 9 filed by Donna's Estate asserts an unsecured claim in the amount of $68,204.00.

That amount is greater than the amount shown by Ex. 2 and 4, which state the amount owing as $17,150. The Trustee contends that the claim of Donna's Estate is a capital contribution. However, the Trustee produced Ex. 1, which is comprised of 4 written loan agreements signed by Riley as BYOB's authorized agent. These 4 loans are corroborated in BYOB's ledger, Ex. 2, and in the MOR submitted in this bankruptcy case, Ex. 4. The Court finds that Donna's Estate has satisfied its ultimate burden and should be allowed an unsecured nonpriority claim shown by Ex. 1, 2, and 4 to be in the amount of $17,150.

Although Riley testified that she was unaware that the loans from Donna's Estate should be allowed interest, MCA § 31-1-103 provides: "Whenever a loan of money is made, it is presumed to be made upon interest unless it is otherwise expressly stipulated at the time in writing." *In re Marriage of Weiss*, 2010 MT 188, ¶ 31-32, 357 Mont. 320, 328, ¶ 31-32, 239 P.3d 123, 129, ¶ 31-32. Neglecting to include interest in a repayment schedule is not the same as expressly stipulating that the loan does not include interest. *Id.* Thus, even though the loan agreements in Ex. 1 do not mention interest, § 31-1-103 presumes the loans were made upon interest, and MCA § 31-1-106(1) would determine a ten percent (10%) annual interest. *Weiss* at ¶ 33. However, Donna's Estate appears to have reversed its claim for interest on Claim 9 by scratching out the box and writing "N/A" next to it, and by failing to include the required statement that itemizes the interest or charges. Since Claim 9 is not entitled to the evidentiary presumption, the failure by Donna's Estate to claim or itemize interest charges, coupled with its overstatement of its claim, prompts the Court to find the allowed amount of Claim 9 in the amount of $17,150 in accordance with Ex. 2, 4, and Riley's testimony.

Claim 10 filed by the Glantz Family asserts an unsecured claim in the amount of

11

$177,434.  Like Claim 9, Claim 10 is not accompanied by signed promissory notes, spreadsheets, or supporting documentation other than Jim Glantz's handwritten note concerning interest, so the Court concludes that Claim 10 is not entitled to the evidentiary presumption and the Glantz Family has the ultimate burden to show that Claim 10 should be allowed.

Certain records of the Debtor were admitted into evidence.  However, those records, Ex. 3 and 4, show the amount owed to the Glantz Family is $45,012.26, far less than the amount asserted on Claim 10, $177,434.00.  More important, however, is that Claim 10 lacks any written promissory notes signed by Donna or other authorized signature of BYOB evidencing an agreement to repay Glantz Family.

An unwritten agreement that by its terms is not to be performed within a year from the making of the agreement would violate Montana's statute of frauds, MCA § 28-2-903(1)(a). *Bloome v. First National Bank of Miles City*, 238 Mont. 181, 186, 776 P.2d 525, 528 (1989). Jim Glantz's handwritten note attached to Proof of Claim 10 argues that the Glantz Family extended a loan in the amount of $98,000 on October 17, 1995, which was to accrue interest added to the principal on an annual basis.  That statement is not signed by Donna or on behalf of BYOB, and is dated 5/17/2012 while the claimant refers to a debt incurred in 1995.  Thus, whatever the agreement between Donna and the Glantz Family, it was not to be performed within a year from its making and the statute of frauds applies.

The Court concludes that the Glantz Family's Proof of Claim No. 10 is invalid and barred by the statute of frauds, § 25-2-903(1)(a), both with respect to the principal and claimed interest, because Glantz Family did not produce a writing subscribed by Donna Glantz or other agent of BYOB, and the evidence shows that repayment of the loans was not to be performed within one

year from the making of the agreement. *See Bloome v. First National Bank of Miles City*, 238 Mont. at 186, 776 P.2d at 528. Based on the decision in *Bloome*, the Court concludes that it cannot construe the statements in BYOB's MOR and Quickbooks ledger as sufficient to substitute for the lack of an agreement in writing signed by Donna to repay the Glantz Family.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above sustaining the Trustee's Objection to Claim No. 9 filed by Donna's Estate and allowing Claim 9 in the amount of $17,150; and disallowing Claim No. 10 filed by the Glantz Family in its entirety.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana